UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WILLIAM A. D.,<br><br>               Plaintiff,<br><br>    v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>               Defendant. | CASE NO. 3:19-cv-05048-BAT<br><br>**ORDER AFFIRMING THE COMMISSIONER'S FINAL DECISION AND DISMISSING WITH PREJUDICE** |

Plaintiff appeals the denial of his application for Supplemental Security Income. He contends the Administrative Law Judge ("ALJ") erred by according the opinions of the testifying medical consultant and examining physicians greater weight than the opinions of his treating optometrist and physician, and erred in her determination of his credibility, all of which resulted in an erroneous residual functional capacity ("RFC") assessment. Dkt. 8, p. 1.

The Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

**BACKGROUND**

Plaintiff filed an application for disability insurance benefits, on August 7, 2014, alleging disability commencing on August 3, 2013. Plaintiff alleges that he has been disabled since a workplace accident in which he slipped, fell, and hit his head and lost consciousness. He alleges that since the accident, he has had persistent double vision (diplopia), migraines and shoulder pain. Plaintiff's application was denied initially on June 5, 2015 and on reconsideration on

October 29, 2015. Tr. 15. ALJ Marilyn S. Mauer presided over a hearing on May 18, 2017, and a supplemental hearing on August 30, 2017. Plaintiff was represented by counsel. A medical consultant and vocational consultant also testified.

Utilizing the five-step disability evaluation process (20 C.F.R. §§ 404.1520, 416.920), the ALJ determined at steps one through three, that Plaintiff had not engaged in substantial activity from his alleged onset date of August 3, 2013 through his date of last insured of December 31, 2014; Plaintiff has the following severe impairments: subjective diplopia, migraine, adhesive capsulitis in the left shoulder, and organic brain syndrome (20 CFR 404.1520(c)); and these impairments did not meet the Listings (20 C.F.R. Part 404, Subpart P. Appendix 1). Tr. 17, 18.

At step four, the ALJ found that through the date last insured, Plaintiff had the RFC to perform light work as defined in 20 CFR 404.1567(b). In addition, Plaintiff can never climb ladders, ropes or scaffolds; can frequently balance, climb ramps and stairs with the aid of a handrail, stoop, crouch, crawl, and kneel; can occasionally reach overhead with the left arm; can work in a setting that does not require exposure to hazards such as unprotected height, large moving equipment, exposure to extreme cold temperatures, and vibration; can understand, remember and apply information, complete tasks with a GED reasoning level of 2 or less in a setting with occasional coworker contact and no public contact; and can perform tasks that do not require excellent depth perception. Tr. 20

At step five, the ALJ relied on a vocational expert, who testified Plaintiff could work as a light office helper, router, and electronics worker. The vocational expert also testified that Plaintiff could still perform these jobs if he were limited to frequent fine manipulation with the dominant right hand, and if he were limited to only occasional reading, he could still perform the jobs of electronics worker and office helper. Tr. 28.

1  The ALJ issued her decision denying Plaintiff's application on December 4, 2017. The Appeals Council denied Plaintiff's request for review on November 13, 2018. Thus, the ALJ's decision is the final decision of the Commissioner, and is ripe for judicial review.

## DISCUSSION

The Court will reverse the ALJ's decision only if it was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). The ALJ's decision may not be reversed on account of an error that is harmless. *Id.* at 1111. Where the evidence is susceptible to more than one rational interpretation, the Court must uphold the Commissioner's interpretation. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

**A.     Evaluation of Medical Evidence**

      **1.     Curtis Baxstrom, O.D.**

Plaintiff contends the ALJ erred in weighing the opinion of his optometrist, Curtis Baxstrom, because the ALJ failed to consider Dr. Baxstrom's treating relationship with Plaintiff and his area of specialization, and ignored the hierarchy of medical opinions. *See*, *e.g*, 20 C.F.R. § 404.1527; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (treating physicians, who actually treat the claimant, examining physicians, who examine but do not treat the claimant, and non-examining physicians, who do not treat nor examine the claimant). Dkt. 10, p. 2.

The ALJ must "explain in the decision the weight given to the opinions" of all acceptable medical sources. 20 C.F.R. § 404.1527(e)(2)(ii) (2016). For treating source opinions, the ALJ must give "good reasons" for the weight given. Social Security Ruling (SSR) 96-2p, *available at*

1996 WL 374188, at *5.[1] An ALJ may reject a contradicted medical opinion by providing "specific and legitimate" reasons, supported by substantial evidence, for doing so. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). Thus, the issue is whether Dr. Baxstrom's medical opinion was contradicted and if so, whether the ALJ gave specific and legitimate reasons, supported by substantial evidence, to discount it.

Dr. Baxstrom, who specializes in optometric neurorehabilitation, diagnosed Plaintiff with sensory fusion disruption syndrome. Tr. 1002-1003. Dr. Baxstrom noted "multiple experiences where [Plaintiff] demonstrated frank diplopia on testing. The unsteady to almost eccentric fixation would lead an affect [sic] of ghosting of images which could be described as diplopia." Tr. 978. In a January 4, 2017 report to the Washington Department of Labor and Industries, Dr. Baxstrom did not identify any specific functional limitations or conclude that Plaintiff could not work. When asked if he agreed with the ability to work assessment (from an independent medical examination), Dr. Baxstrom wrote "unknown—there is concern for his ability to safely work [secondary] to visual" symptoms. Tr. 982.

The ALJ concluded that Dr. Baxstrom's opinion was against the weight of other medical evidence in the record, in which no objective support for Plaintiff's complaints of visual disturbance were found. Tr. 21-22 ("With the exception of Dr. Curtis R. Baxstrom, O.D., the claimant's treating physician, who provided a statement in January 2019 that the claimant has unsteady fixation of each eye (27F), doctors have not been able to substantiate the claimant's alleged diplopia.") An ALJ may reject medical opinion that is unsupported by the record as a whole. *Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004). Also, an

---

[1] The agency has rescinded this SSR in order to conform with regulatory changes applying to claims filed after March 27, 2017. 82 Fed. Reg. 15263 (Mar. 27, 2017) (rescinding SSR "effective for claims filed on or after March 27, 2017").

ALJ may reject an opinion that is more heavily based on a claimant's self-reports than on clinical observations. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014).

The ALJ first noted that Dr. Baxstrom's diagnosis stands in stark contrast to the opinions of several other doctors who were not able to substantiate the alleged diplopia on examination. These doctors included Dr. Steven Hamilton, a neuro-ophthalmologist; Dr. Richard Bensinger; Dr. Leonard Seifter; Dr. Wendt, a neurologist; and Dr. Boone, an ophthalmologist, who all opined that there was a mismatch between subjective and objective findings regarding the Plaintiff's diplopia. Tr. 22.

Steven Hamilton, M.D., a neuro-ophthalmologist, noted that although Plaintiff alleged during his examination that he could not move his eyes from their primary position, he was clearly moving them left and right with no difficulty when they talked. Tr. 22, 837. Dr. Hamilton concluded that there was a mismatch between Plaintiff's subjective reports and the objective findings during testing, and he suspected a "functional overlay" to Plaintiff's reports. Tr. 837. Richard Bensinger, M.D., an ophthalmologist, reported that despite Plaintiff's subjective reports of double vision, no doubling of vision could be elicited in any gaze position, Plaintiff's eyes moved well, stereoscopic vision showed very good fusion, and he had corrected 20/20 vision. Tr. 222, 671-73. Dr. Bensinger concluded, "[t]here seems to be a very large disconnect between [Plaintiff's] reported functioning and the determinations made on the physical examination of his eye." Tr. 673. Dr. Bensinger also concluded that there were "no objective visual limitations to return to work." Tr. 673.

Leonard Seifter, M.D., also examined Plaintiff and agreed with Dr. Hamilton's opinion. Dr. Seifter concluded that Plaintiff exhibited no diplopia in primary gaze, and that no evidence of tropia or phoria could be found on testing. Tr. 22, 687. Dr. Seifter suspected that there was a

functional component to Plaintiff's responses "due to the mismatch between subjective and objective findings." Tr. 687. John Wendt, M.D., a neurologist, who reviewed records and examined Plaintiff, came to the same conclusion. Dr. Wendt found that Plaintiff's subjective diplopia "is almost certainly functional and nonorganic" and was not substantiated by the neurological examination. Tr. 22, 664. Benton Boone, M.D., an ophthalmologist, reviewed the records and likewise testified that there was a mismatch between subjective and objective findings regarding Plaintiff's diplopia. He concluded that Plaintiff had no visual limitations since his vision was within normal limits on examination, and multiple providers were unable to produce diplopia during examinations. Tr. 22, 80-82, 1216.

Plaintiff also argues that the ALJ erred in not giving more weight to Dr. Baxstrom's opinion because Dr. Boone, the testifying expert, had never treated anyone with Plaintiff's particular syndrome (*i.e.*, fusion disruption syndrome). Dkt. 8, p. 6. In this regard, the ALJ noted the testimony of ophthalmologist Dr. Boone, that fusion disruption syndrome "is not a condition generally recognized by ophthalmologists, but is rather a condition that optometrists have posited." Tr. 23. In addition, the ALJ considered four examining opinions, supported by objective testing, along with the opinion of the testifying ophthalmologist, Dr. Boone, all of whom concluded there was no objective evidence to support diplopia. *See*, *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."). The ALJ further noted the persistent mischaracterization by Plaintiff's representative of Dr. Boone's testimony about visual fixation testing and the need for Plaintiff to have had further testing in 2014, although she failed to identify what additional testing would have been required. Tr. 24.

In summary, the Court finds the ALJ did not err in the weight she assigned to the medical evidence. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (even if there is more than one reasonable interpretation of the evidence, the Court will not substitute its judgment for the judgment of the ALJ).

### 2. Paul B. Nutter, M.D.

Dr. Nutter treated Plaintiff for a closed head injury, post-concussive syndrome, headaches, neck sprain, and left shoulder sprain with residual adhesive capsulitis. Dkt. 10, p. 3 (citing Tr. 449, 478, 480, 483, 484, 491, 493, 523)). After performing a neuropsychological consultation in October 2014, Dr. Nutter opined, in part, that Plaintiff "was constantly working to accommodate for his diplopia which puts a persistent burden on his cognitive functioning." Tr. 26 (24F, p. 58). In April 2014, Dr. Nutter opined that Plaintiff was limited in lifting, crawling, going up and down ladders, carrying, being on uneven terrain, and was unable to perform his previous job for at least the next two months, but that Plaintiff was capable of doing light duty jobs. The ALJ gave this opinion partial weight to the extent it was inconsistent with the opinions of Drs. Boone, Wendt, Bensinger, and Seifter, "as it gives disproportionate weight to the claimant's claims of diplopia, which have largely not been substantiated by objective testing and medical opinions." Tr. 26. The Court finds this was not error for the same reasons the ALJ did not err in discounting Dr. Baxstrom's opinion.

Plaintiff however, contends the ALJ failed to consider other limitations assessed by Dr. Nutter, *i.e.*, that Plaintiff would be "limited to carrying up to 25 pounds and only on level surfaces. … He has crawling limited to a rare level. He is not allowed to go up and down stairs at this point." Dkt. 10, p. 3 (citing Tr. 481). Plaintiff argues that because the ALJ failed to present these limitations to the vocational expert, the RFC is in error. The Court disagrees.

The limitations to which Plaintiff refers are contained in Dr. Nutter's evaluation of April 24, 2014. At that time, Dr. Nutter noted Plaintiff was limited in driving, carrying up to 25 pounds on level surfaces, not going on ladders, crawling limited to a rare level, and in not going up and down stairs "at this point." Tr. 481. In a letter dated April 21, 2014, Dr. Nutter stated that these "deficits are temporary and will last for a minimum of 60 days." Tr. 476.

The ALJ's RFC assessment limited Plaintiff to light work as defined in 20 CFR 404.1567(b) (lifting no more than 20 pounds); along with the additional limitations of never climbing ladders, ropes, or scaffolds, and climbing ramps and stairs with the aid of a handrail. Tr. 20. Thus, even if the ALJ erred in failing to specifically present Dr. Nutter's temporary limitations to the vocational expert, the error was harmless as the limitations are fairly included in the RFC.

**B.     Evaluation of Plaintiff's Subjective Complaints**

The ALJ found Plaintiff's allegations of disabling symptoms to be inconsistent with the medical and other evidence in the record. Tr. 21. The ALJ is responsible for weighing a claimant's allegations and resolving ambiguities in the evidence. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). When assessing a claimant's allegations, the Commissioner will consider all of the available evidence and will apply several factors in determining the extent to which a claimant's alleged limitations can reasonably be accepted as consistent with the medical evidence and other evidence. 20 C.F.R. § 404.1529(c). "In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." SSR 16-3p,

available at 2017 WL 5180304 (as amended). The Ninth Circuit also holds that clear and convincing reasons are required to reject a claimant's testimony. *Garrison v. Colvin*, 759 F.3d 995, 1015 n. 18 (9th Cir. 2014).

Plaintiff alleges that following his workplace accident, he has had persistent double vision (diplopia), migraines, and shoulder pain. Tr. 21. Plaintiff alleges that he has double vision, has trouble focusing his eyes, and objects appear as though they are floating. He alleges that because of his vision problems, he bumps into people and objects, and has difficulty with balance and depth perception. Plaintiff claims he suffers from headaches 2-3 times per week that last 2 hours, he can sit and stand for a maximum of 30 minutes each, and he cannot lift more than 20 pounds, but in practice lifts no more than 10-15 pounds. He also alleges a right finger injury, and states that it is difficult for him to hold objects such as a pencil, though he admits that he worked as an electrician following the injury for several years. He also alleges having knee pain, but admits that it did not keep him from working and he did not require special accommodations at work for his knee condition. He alleges suffering from depression, but admits that he gets no counseling and takes no medication for it. *Id.*

Plaintiff argues that the ALJ failed to identify specifically which of Plaintiff's statements she found not credible and failed to link that testimony to particular parts of the record supporting her non credibility determination. *See Brown-Hunter v. Colvin*, 806 F.3d 487, 493-494 (9th Cir. 2015) (citing *Burrell v. Colvin*, 775 F.3d 1133, 1139 (9th Cir. 2014) (holding that the ALJ committed legal error because he never connected the medical record of Claimant's testimony" nor made "a specific finding linking a lack of medical records to Claimant's testimony about the intensity of her … pain" (emphasis added)).

The ALJ first found that Plaintiff's complaints of double vision were inconsistent with objective testing and medical opinions about his condition. Tr. 21-22. Although the ALJ should not discount subjective allegations merely because they are not fully substantiated by objective findings, when allegations specifically conflict with a medical opinion about what the claimant can do, that alone is a clear and convincing reason to discount the allegations. *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). As previously noted, four examining physicians found that Plaintiff's allegations conflicted with the objective testing (showing that he had normal vision), so they concluded that he could work and/or had no visual limitations. Tr. 21-22. They also found a mismatch between his subjective complaints and the objective findings, leading them to conclude that his eye symptoms were nonorganic and functional. Tr. 664, 673, 687, 837. Based on this evidence, it was not irrational for the ALJ to discount Plaintiff's reports of his symptoms.

In addition, the ALJ identified specific inconsistencies between Plaintiff's reports of his symptoms and the medical evidence, *i.e.*, Plaintiff did not have significant residual neurological deficits after the work injury, there was no evidence of traumatic brain injury, and by the time he went to the doctor more than a week after his work accident, his visual problems had completely resolved. Tr. 22 (citing Tr. 630-32, 434).

The ALJ also found that Plaintiff's subjective symptoms improved with treatment. Tr. 22. This is a convincing reason to discount an allegation of disabling symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). The record reflects that shutter glasses have helped improve Plaintiff's visual field (Tr. 22, 639), and Jacob Dufour, O.D., noted that Plaintiff had improvement with prism glasses (Tr. 22, 936). Physical therapy helped Plaintiff's shoulder symptoms, restrictions seemed to be primarily muscular, and diagnostic testing showed no

pathology (Tr. 23, 446, 532, 571), and by 2016, Plaintiff was no longer in physical therapy (Tr. 1096). As to Plaintiff's alleged organic brain syndrome, medical providers found no persisting brain damage or evidence of severe neuropsychological deficits, although one provider noted that, based on Plaintiff's self-reported symptoms of diplopia and migraines, his overall cognitive efficiency and emotion regulation appeared diminished. Tr. 22. The ALJ noted that the RFC limiting Plaintiff to unskilled work with a GED reasoning level of 2 or less took these conditions into account. Tr. 22.

In sum, the ALJ noted where Plaintiff's allegations conflicted with the medical evidence, which indicated that there is no organic basis for his reports. The ALJ also noted Plaintiff's symptoms improved with conservative treatment. Even if one of the reasons is invalid, the ALJ's finding should still be affirmed, as the ALJ gave several reasons and the overall finding is supported by substantial evidence. *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008) (upholding an ALJ's credibility determination although two of the ALJ's reasons were invalid).

## CONCLUSION

For the foregoing reasons, the Commissioner's decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 18th day of June, 2019.

BRIAN A. TSUCHIDA
Chief United States Magistrate Judge